NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| TRACY S., ) | |
| ) | Supreme Court No. S-16939 |
| Appellant, ) | |
| ) | Superior Court No. 3GL-15-00001 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, ) | |
| OFFICE OF CHILDREN'S SERVICES, ) | No. 1699 – October 10, 2018 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Glennallen, Daniel Schally, Judge pro tem.

Appearances: Carolyn Perkins, Law Office of Carolyn Perkins, Salt Lake City, Utah, for Appellant. Ruth Botstein, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Anita L. Alves, Assistant Public Advocate, and Chad Holt, Public Advocate, Anchorage, for Guardian Ad Litem

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I. INTRODUCTION

Following a parental rights termination trial, the superior court terminated a mother's rights to her Indian child. The mother appeals, arguing that the Office of

---

* Entered under Alaska Appellate Rule 214.

Children's Services (OCS) did not make active efforts to provide remedial services and rehabilitative programs to prevent the breakup of her Indian family, and that she had remedied the conduct or conditions that placed her child at substantial risk of harm within a reasonable time. Finding no error, we affirm the superior court's termination order.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Tracy S.,[1] the mother, has struggled with methamphetamine addiction for over 17 years. She sought treatment on multiple occasions, but until recently had been unable to maintain sobriety. She has been on probation for a controlled-substances crime since May 2014.

In June 2014 Tracy was imprisoned for violating parole conditions after she tested positive for methamphetamine. OCS then removed her two sons from her care.[2] Prior to removal, an OCS case worker helped Tracy develop a safety plan. Following removal, OCS assisted Tracy with applications to inpatient facilities. Her application to Dena A Coy — a substance abuse treatment center — was accepted, and Tracy entered treatment there in February 2015. But she was discharged in May after violating program rules.

While receiving treatment at Dena A Coy, Tracy was pregnant with her third child, Ivan. After Tracy was discharged, OCS met with her to discuss services she could engage in prior to Ivan's birth. OCS also referred Tracy to Copper River Native Association (Copper River Program), where she began treatment in June.

---

[1]     We use pseudonyms throughout to protect the family's privacy.

[2]     In June 2015 OCS released custody of her sons to their respective fathers.

Tracy gave birth to Ivan in early August 2015. Ivan tested positive for amphetamine at birth and immediately began to suffer from withdrawal. Tracy also tested positive for amphetamine at the time of delivery. She initially denied using methamphetamine while pregnant with Ivan, but later admitted that this had been a lie.

OCS took emergency custody of Ivan the day after he was born. OCS filed an emergency petition for adjudication of Ivan as a child in need of aid and for temporary custody. Tracy eventually stipulated that Ivan was a child in need of aid and that OCS should retain custody.

Ivan remained in the neonatal intensive care unit (NICU) for five weeks. During the first three days, Tracy visited him in the NICU multiple times. But Tracy returned to her apartment in Glennallen for the remainder of this period and was only able to visit Ivan once, when OCS arranged and paid for her transportation and lodging.

Ivan was released from the hospital in September 2015, and after a brief temporary placement he was placed with paternal family members in Glenallen. Tracy initially visited Ivan daily. But in October Tracy moved to Alaska Family Services — a domestic violence shelter in Palmer — with the help of probation officers and OCS, and filed a restraining order against Ivan's father, Andrew. While OCS brought Ivan to Palmer for visits following the move, the frequency of these visits gradually declined due to staffing issues and logistical problems with the long drive.

Around the time she moved into Alaska Family Services, Tracy completed her treatment with the Copper River Program. Also around this time, OCS and Tracy's probation officer referred Tracy to the Women in Recovery Reunification and Action Program (Women in Recovery), a program designed to help mothers follow OCS case plans. On November 3 — approximately three months after OCS took custody of Ivan — OCS developed a written case plan for Tracy.

The case plan established two goals for Tracy: "address[ing] her ongoing substance abuse" and "maintain[ing] and nurtur[ing] the bond between her and her newborn son." To further the first goal, Tracy would participate in random drug testing and attend Alcoholics Anonymous (AA) meetings. She would also participate in Women in Recovery. To further the second goal, Tracy would visit with Ivan on scheduled visitation days and engage in a parenting group or parenting class. To support Tracy, OCS would refer her to substance abuse counseling providers and provide her with a family contact plan that set out times and days when she could visit Ivan.

In November, with assistance from her probation officer, Tracy entered the court's PACE program, which required her to comply with specific conditions including a drug testing program. Also in November, an admissions panel deferred consideration of Tracy's Women in Recovery application until a neuropsychological evaluation could be completed. Tracy completed the evaluation in January 2016, but the Women in Recovery application process did not move forward. Nevertheless Tracy received case plans at Alaska Family Services over the next several months that were similar to those she would have received as a Women in Recovery participant. As an Alaska Family Services resident, Tracy was also eligible to attend a domestic violence support group and a life skills group.

By March 2016 OCS was considering allowing overnight visits between Tracy and Ivan. But before any visits could begin, Tracy relapsed and tested positive for cocaine. She spent three days in jail, and then returned to Alaska Family Services. Upon leaving the shelter in late March, Tracy moved in with Andrew's brother Derek, who she knew was a drug user.

In April Tracy completed an assessment with Set Free Alaska, a substance abuse treatment center, and began outpatient treatment. As part of her outpatient program, she participated in group meetings as well as one-on-one counseling. She also

continued to participate in random drug testing through PACE. But Tracy was unable to maintain sobriety during this period, and chose to cancel planned visits with Ivan when she felt the visits would be impacted by her drug use. Several petitions to revoke probation were filed against Tracy due to positive and missed drug tests. As a consequence of her probation violations, Tracy was imprisoned for almost the entirety of December, January, and February.

Tracy was transferred to Dena A Coy in late February 2017, but was discharged in June after violating program rules. Because she was unable to complete the inpatient program, Tracy returned to jail for 40 days. She then moved back to the Alaska Family Services shelter.

In light of Tracy's difficulties with maintaining sobriety under the PACE program, her probation officer recommended her to the Palmer Wellness Court, a newly created substance abuse treatment program. Wellness Court participants complete 16 hours of structured work per week, attend recovery support groups, meet with their probation officers on a regular basis, and undergo more intensive random drug testing than PACE participants. Tracy was accepted into the Wellness Court program in July and began participating in early August. Around the same time, she completed a new assessment with Set Free Alaska.

Beginning in August 2017 Tracy engaged in Set Free Alaska outpatient treatment. She also became an active participant in several support groups, including both Alcoholics and Narcotics Anonymous, and Fiend2Clean. Additionally, she again applied to Women in Recovery. In order to apply, Tracy was required to submit an updated case plan; but OCS delivered the updated plan over a month after she requested it, delaying her ability to participate in the program. She was eventually accepted into Women in Recovery in early October.

## B.     Proceedings

A five-day termination trial took place in October and November 2017. When the trial began, Tracy had been sober for over eight months — her longest period of sobriety in several years. Tracy began communicating with Andrew before the trial started and met with him while the trial was ongoing. This contact with Andrew violated one of Tracy's probation conditions.

On November 28 the superior court found that Ivan was in need of aid under AS 47.10.011(10) (substance abuse) and (6) (risk of physical harm), that Tracy's continued custody would likely result in serious emotional or physical damage to Ivan,[3] and that termination of Tracy's parental rights was in Ivan's best interests.[4]  It also concluded that OCS had made active efforts to prevent the breakup of the Indian family.[5] The court acknowledged that delivery of Tracy's initial written case plan and the updated plan requested in summer 2017 had been delayed, but concluded that neither delay had significantly impacted Tracy's progress or treatment. Lastly, the court found that Tracy had failed to remedy her conduct within a reasonable time.[6]  The court commended Tracy's "remarkable efforts" toward achieving sobriety,[7] but noted that "the reasonable time is . . . from the child's standpoint, not from the parent's."  Accordingly, the court

---

[3]     25 U.S.C. § 1912(f) (2012); CINA Rule 18(c)(4).

[4]     *See* AS 47.10.088(c); CINA Rule 18(c)(3).

[5]     *See* AS 47.10.080(c)(3); 25 U.S.C. § 1912(d); CINA Rule 18(c)(2)(B). Through his father, Ivan is affiliated with the Native Village of Kluti-Kaah.

[6]     *See* AS 47.10.088(a)(2)(B).

[7]     When the court made its findings, Tracy had been sober for approximately ten months.

concluded that despite Tracy's progress, she was not "quite there yet in terms of those things being completed within a reasonable time."

In December 2017 the superior court issued a written order. The court listed the evidence supporting its active efforts finding, including: safety plans, case plans, substance abuse assessment and treatment, random drug testing, a neuropsychological evaluation, domestic violence education and support, parenting classes, and family contact. The court also further explained the basis for its "reasonable time" finding:

> [Tracy] . . . has not remedied her substance abuse within a reasonable time from the child's perspective. [Ivan] is two years old and has been in custody since he was 1 day old. [Tracy's] struggles with substance use span more than a decade and she continues to struggle to implement boundaries and associate with healthy people, which she acknowledge[s] is a large part of her substance use. This is evidenced by her [continued contact with Andrew and his brother Derek]. . . . Given these continuing issues, [Ivan's] age, the length of time he has been in custody, and because [Tracy's] progress is recent given the severity of her substance abuse, she has not remedied her behavior within a reasonable time.

In light of these findings, the court terminated Tracy's parental rights. Tracy appeals.

## III.  DISCUSSION

Tracy challenges the superior court's determination that OCS made active efforts to reunify her with her child and its finding that she failed to remedy her conduct within a reasonable time. She does not contest the court's finding that Ivan is a child in need of aid, its determination that Ivan would be harmed by reunification with Tracy, or its best-interests finding.

**A.    The Superior Court Did Not Clearly Err By Finding That The State Made Active Efforts To Prevent The Breakup Of The Family.**

In a proceeding involving an Indian child, the superior court may only terminate a parent's rights if it finds by clear and convincing evidence that the State has made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and that these efforts have been unsuccessful.[8] Whether the State made the required active efforts "is a mixed question of law and fact."[9] "We review the content of the superior court's findings for clear error, but we review de novo whether those findings satisfy the requirements of the CINA rules and [the Indian Child Welfare Act]."[10]

Factual findings are clearly erroneous if "a review of the entire record in the light most favorable to the prevailing party below leaves [this court] with a definite and firm conviction that a mistake has been made."[11] While " '[n]o pat formula' exists for distinguishing between active and passive efforts,"[12] active efforts will generally be found when the State "takes the client through the steps of [a] plan rather than requiring that the plan be performed on its own."[13]  " '[A]n analysis of the [S]tate's active efforts

---

[8]    CINA Rule 18(c)(2)(B); *see* 25 U.S.C. § 1912(d).

[9]    *Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 314 P.3d 518, 526 (Alaska 2013).

[10]    *Id.*

[11]    *Id.* at 526-27 (alteration in original) (quoting *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 269-70 (Alaska 2011)).

[12]    *Id.* at 527 (quoting *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 261 (Alaska 1999)).

[13]    *Id.* (quoting *N.A. v. State, Div. of Family & Youth Servs.*, 19 P.3d 597, 602-
(continued...)

is not limited to efforts by OCS'; the court may consider services provided by other state entities such as the Department of Corrections."[14] "[S]ervices provided through the specialized therapeutic courts of the Alaska Court System," including wellness courts, may also be considered.[15] Additionally, when assessing whether active efforts have been made, a superior court may consider "all of OCS's efforts from the time that it first became involved with the family."[16]

Here the superior court's factual findings were not clearly erroneous. Prior to Ivan's birth, OCS provided Tracy with a safety plan in relation to the CINA cases concerning her older sons. OCS provided Tracy with a case plan three months after taking custody of Ivan, and an updated case plan in August 2017. OCS also referred Tracy to the Copper River Program and Dena A Coy substance abuse treatment programs, and provided a referral for a neuropsychological assessment. Tracy's probation officer recommended her participation in PACE and in the Palmer Wellness

---

[13](...continued)
03 (Alaska 2001)).

[14]    *Denny M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 365 P.3d 345, 350 (Alaska 2016) (second alteration in original) (quoting *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 849 (Alaska 2009)). Probation officers are employees of the Department of Corrections.

[15]    *Id.*

[16]    *Sandy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 216 P.3d 1180, 1189 (Alaska 2009); *see also id.* at 1188-89 ("The question before us is a narrow one: When a child is born while OCS is involved with the family in an ongoing case, should the trial court view OCS's efforts toward each child in isolation rather than in the context of its efforts toward all of the children? The answer to that question is 'no.' "); *E.A. v. State, Div. of Family & Youth Serv.*, 46 P.3d 986, 990-91 (Alaska 2002) (considering the State's entire involvement with a family to determine whether it made active efforts).

Court, both of which required random drug testing. Both OCS and Tracy's probation officer referred her to Women in Recovery, which provides participants with access to domestic violence classes and parenting classes, and helped her become a resident at Alaska Family Services, where she was eligible to attend a domestic violence support group and a life skills group. Lastly, OCS facilitated visitation between Tracy and Ivan both before and after Tracy moved to Palmer.

Tracy raises several issues with OCS's efforts in her case. First she contends that OCS failed to provide her with an initial written case plan in a timely manner. While it is true that OCS took custody of Ivan in August 2015 but did not produce a formal case plan until that November, it appears that OCS had discussed with Tracy what she needed to do in the interim. Additionally, the goals in the finalized case plan were identical to those in Tracy's earlier safety plan. While a delay in providing a formal case plan is relevant to whether OCS made the required active efforts, we have previously held that it is not dispositive.[17]

Tracy next argues that OCS failed to refer her to counseling or therapy following her neuropsychological assessment. But the record does not support this assertion. There was almost no discussion of the aftermath of Tracy's neuropsychological assessment during the termination proceeding. What discussion there was indicated that Tracy participated in services corresponding to the recommendations of the doctor who conducted the assessment.

---

[17] *See Dashiell R.*, 222 P.3d at 849-50 (Alaska 2009) (affirming active efforts where the State developed a case plan almost two years after taking custody); *T.F. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 26 P.3d 1089, 1090, 1095 n.28 (Alaska 2001) (affirming active efforts where the State developed a case plan eight months after the children's birth).

Finally Tracy argues that OCS did not provide an updated case plan until September 2017 — over a month after she requested it. The record suggests that OCS did, indeed, delay delivery of the updated case plan, which in turn delayed Tracy's ability to participate in the Women in Recovery program by approximately one month. However testimony during the termination proceeding indicates that as an Alaska Family Services resident, Tracy was able to participate in several of the same services provided to Women in Recovery participants during that period of delay. And we consider this one-month lapse in the context of "the entirety of the state's efforts" to prevent the breakup of Tracy's family.[18]

OCS's efforts were not perfect. It should have provided Tracy's initial case plan and her updated case plan more quickly. It is also possible that OCS could have provided Tracy with additional assistance following her neuropsychological assessment. However, "[o]ur concern is not with whether the State's efforts were ideal, but with whether they crossed the threshold between passive and active efforts."[19] Here the superior court correctly concluded that Tracy had not been left to "develop . . . her own resources towards bringing [her case plan] to fruition."[20] Notwithstanding the lapses Tracy identifies, "the multiple actions taken by [the State] and summarized by the

---

[18] *See Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1269 (Alaska 2008).

[19] *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 272 (Alaska 2011); *see also Bob S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 400 P.3d 99, 107 (Alaska 2017) ("OCS's efforts may not have been ideal, but the record supports that they were active.").

[20] *Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 314 P.3d 518, 527 (Alaska 2013) (quoting *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1114 (Alaska 2010)).

superior court, viewed as a whole, decisively crossed the threshold into active efforts."[21]

Accordingly we affirm the superior court's determination that the State made active efforts to prevent the breakup of Tracy's family.

**B. The Superior Court Did Not Err By Finding That Tracy Failed To Remedy Her Conduct Within A Reasonable Time.**

Before terminating parental rights, a court must find that the parent

has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or . . . has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury.[22]

In making this determination, the court may consider "any fact relating to the best interests of the child."[23] These include, but are not limited to:

(1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harm will continue; and (5) the history of conduct or conditions created by the parent.[24]

Whether a parent remedied conduct or conditions that placed a child at substantial risk within a reasonable time "is generally a finding of fact that will only be reviewed for

---

[21] *Pravat P.*, 249 P.3d at 272.

[22] AS 47.10.088(a)(2)(A)-(B).

[23] AS 47.10.088(b).

[24] *Pravat P.*, 249 P.3d 272-73; *see* AS 47.10.088(b)(1)-(5).

clear error."[25]

Tracy argues that the superior court erred by finding that she failed to remedy her substance abuse within a reasonable time. She contends that "[a]t the time of the termination trial, [she] had made substantial progress on her case plan and remedied her problems." Tracy notes that she participated in substance abuse treatment programs, parenting courses, therapy sessions, and other programs prior to the termination proceeding, and that she was compliant with her case plan when the proceeding commenced. She also notes that she had been sober for approximately ten months when the court issued its order. Tracy correctly contends that testimony during the proceeding indicated she is making impressive progress, she is fully committed to sobriety, and her attitude towards addiction is markedly different than in the past.

We addressed a similar situation in *Sherry R. v. State, Department of Health & Social Services, Division of Family & Youth Services*.[26] In *Sherry R.* the superior court concluded that a mother's substance abuse had placed her children at substantial risk of harm.[27] Although the mother had been sober for approximately one year at the time of trial, the superior court concluded she failed to remedy the conditions that placed her children at substantial risk within a reasonable time.[28] In evaluating the court's decision, we first noted that sobriety was "a relatively new phenomenon in [the mother's] life" and that she "ha[d] struggled with substance abuse and relapsed after treatment a number of

---

[25] *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010).

[26] 74 P.3d 896 (Alaska 2003).

[27] *Id.* at 901.

[28] *Id.* at 902.

times."[29]  We concluded that the superior court was  "entitled to rely on a parent's documented history of conduct as a predictor of future behavior," and that the superior court had in fact "relied upon [the mother's] long history of substance abuse in making [its] determination."[30]  Lastly, we noted that "even since sobriety, [the mother had] continued to make choices that affect her children's lives adversely" — including maintaining connections to a partner who had been convicted of child sexual assault.[31] Accordingly, we held that the superior court's determination was not clearly erroneous.[32]

The superior court applied analogous reasoning here.  In concluding that Tracy failed to remedy her conduct within a reasonable time, the court noted that Tracy's "struggles with substance use span more than a decade," and that she "continues to struggle to implement boundaries and associate with healthy people."  Thus, as in *Sherry R.*, the superior court "relied upon [Tracy's] long history of substance abuse" and her decision to maintain relationships that could "affect her [child's life] adversely" in making its determination.[33]

The record supports the superior court's conclusions.  Like the mother in *Sherry R.*, Tracy's sobriety is a "relatively new phenomenon"; she had difficulty maintaining sobriety both before and after OCS took custody of Ivan, and her period of

---

[29]  *Id.*

[30]  *Id.* at 903.

[31]  *Id.*

[32]  *Id.* We have followed a similar approach in other cases.  *See, e.g., Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1261 (Alaska 2010) (six months of sobriety before termination trial); *Thomas H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 184 P.3d 9, 12, 14-15 (Alaska 2008) (approximately eleven months of sobriety before termination trial).

[33]  74 P.3d at 903.

sobriety leading up to the termination trial was her longest in several years.[34] Tracy testified during the termination proceeding that she sometimes engages in "self-sabotage" and that this behavior includes "associating with the wrong people." Indeed she further testified to interacting with Derek — who she knew was a drug user — two months before the termination proceeding commenced, and resuming contact with Andrew immediately prior to the proceeding — despite the fact that her probation conditions prohibited such contact.

Tracy attempts to distinguish *Sherry R.* on the grounds that she "remedied her substance abuse problem" prior to the termination proceeding, demonstrating an "ability to accept her problem and . . . [a] commitment to sobriety." However, Tracy's period of sobriety before her termination proceeding was actually several months shorter than that of the mother in *Sherry R.*[35] Furthermore a significant portion of that period occurred while Tracy was in jail and in outpatient treatment at Dena A Coy.[36] And while it is clear that Tracy has made significant progress in her battle against substance abuse, *Sherry R.* establishes that a superior court may "rely on a parent's documented history of conduct as a predictor of future behavior."[37] We conclude that it did so properly here.

The superior court's determination that Tracy failed, within a reasonable time, to remedy the conduct or conditions that placed Ivan at substantial risk of harm was not clearly erroneous. Accordingly we affirm the superior court's finding.

---

[34] *Id*. at 902.

[35] *Id*.

[36] *Cf. Thomas H.*, 184 P.3d at 15 ("[T]he period of time during which Thomas appears to have succeeded at treatment corresponds exactly with his third-party supervision. In short, the record supports the trial court's conclusion that Thomas waited too long to begin to remedy his conduct.").

[37] 74 P.3d at 903.

## IV. CONCLUSION

We AFFIRM the superior court's decision terminating Tracy's parental rights.